EDWARDS
ET AL., f. p. c.
*vs.*
MARTIN'S
HEIRS ET AL.

---

## EDWARDS ET AL., f. p. c., *vs.* MARTIN'S HEIRS ET AL.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF
LAFAYETTE, THE JUDGE OF THE SIXTH PRESIDING.

The Roman law, in laying down a general rule on the subject of warranty,
provides, that the purchaser must be indemnified to the *extent of the interest*
he had in not being evicted : on this there are some restrictions.

In regard to agreements, having for their object certain quantity or amount,
as in sales, leases, &c., the damages were not to exceed the value of the sub-
ject matter of the contract.

A debtor, engaging to pay damages for the non-performance of his obligation,
is presumed to intend only the highest damages, within the contemplation of
the parties at the time of the contract; and if they are such as could not
have been foreseen, they must be reduced to a reasonable *sum*.

Principles of the Roman law, which never had the force of positive law in
this country ; but which are founded in equity and reason, will be adopted as
rules, regulating the indemnity, to which a party is liable, on his warranty.

So it is improbable, that parties ever contemplated, that the damages in case of
eviction should be larger, than the value of the subject matter of the con-
tract.

So where the vendee of a female slave, purchased in 1802, was evicted, and the
vendor refunded the price; is afterwards evicted of *her increase* or *children*,
the vendor is only to pay as damages, the value or original price of said
slave, and not the value of the young slaves, born of her after the sale,
although much greater.

This is an action for personal liberty and freedom. The
plaintiffs are colored persons, and children of a colored woman
named Polly Edwards, who was sold as a slave the 24th April,
1802, by Joseph Andrus, residing in the county of Opelousas,
to André Martin, the ancestor of defendants, for $625. The

WESTERN DIS.
September,1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

plaintiffs were all born after this sale, and while their mother was held as a slave by Martin. He afterwards sold her to one Joseph Foreman, against whom she asserted her freedom, alleging she was free born. She had judgment in December, 1834, declaring her free, and that she was born free. Foreman had judgment over against Martin on his warranty for $665, who had a like judgment against Andrus, and who had also judgment against the widow and heirs of Edwards King, from whom he had purchased. Andrus paid to Martin the amount of the judgment, on the eviction of Foreman.

Martin being now sued by the children of Polly Edwards, who claimed their freedom in right of their mother, who was a free woman from her birth, called Andrus, in warranty as the vendor of the mother, and prayed judgment over against him in case of eviction. The warrantor admitted the original sale and the eviction and freedom of the mother, but denied, that he was liable in warranty for the price or value of the children, born after the sale. He also called in the heirs of Edwards King, from whom he had originally purchased, to warrant and defend him against the demand of Martin, his vendee.

Upon these pleadings and issues the cause was tried before the court and a jury.

The record and evidence of the case of Polly Edwards against Foreman was produced, which showed, that the mother of the plaintiffs was a free woman from her birth, and that consequently they were born free, although at the time their mother was held as a slave. There was a verdict and judgment, declaring *them free* : assessing their value as slaves at the time to be $4,800, for which the heirs of André Martin, deceased, were entitled to recover from Joseph Andrus, on his warranty as vendor of their mother. Andrus was declared entitled to recover the same sum from King's heirs. From judgment rendered on this verdict, Andrus's executor (he being now dead) appealed.

This cause was twice elaborately argued by *Mr. Simon*, for Martin's heirs, and by *Thos. H. Lewis, & B. C. Crow, Esqrs.*,

WESTERN DIS.
September,1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

for the appellant, Andrus, called in warranty. It was taken under advisement, and again argued, and was again submitted to the court on the following written points and authorities.

*Voorhies*, acting for Judge *Simon*, on behalf of Martin's heirs, maintained the following points.

1. The only question arising in this case is relative to the extent of the warranty, due to the heirs of Martin by the succession of Joseph Andrus, deceased. The heirs of Martin have been evicted of the mother of the slaves, plaintiffs in this cause. Said plaintiffs have received their freedom, in consequence of their mother having succeeded in showing, that she was born free, and of their being entitled to follow the condition of their mother. Polly Edwards was sold by Andrus to Martin in 1802, and then she had no child; her children, plaintiffs in this cause, were born after the purchase. The heirs of Martin contend, that having been evicted of the female slave, sold, and of her issue, the succession of Andrus is bound to return them not only the original price of the purchase, but also to compensate them *for all the losses and damages* resulting from the said eviction; that is to say, the value of the children of the slave purchased.

2. Were this case to be governed by the laws actually in force in this State, the question presented would be easily decided. Our code has specially provided for a case like the present one; C. Code, arts. 537, 2482, 2488; 9 La. Rep., 552. Said laws would certainly sustain the defendants in their pretensions.

But the question is to be decided by the laws in force in this country in 1802. How far do said laws agree with those now in force? Can it not be said, that the articles of our Code were taken from the old laws of the country, which are derived, with regard to the question now before this court, from the Roman laws? Under the Spanish laws, the vendor is bound, in case of eviction, to return the price, and to pay all the losses and damages sustained by the vendee : " Con todos

los daños e los menoscabos que le vinieron por esta razon;"
Partida 5, tit. 5, L. 32 and 36.    The same principle is laid
down in C. de evictione, L. 17; C. cùm questio, &c., &c.

Under the Roman law, the children of a female slave, born
after their mother was put in pledge, remain liable to the
pledge like the mother; C. lib. 8, tit. 25, L. 1.    And why are
those children liable to the pledge?    Because they are con-
sidered as the fruits of the thing pledged.

3.  In case of a sale, the warranty need not be special; C.
lib. 8, tit. 45, L. 6, p. 422.

Whether the slave recovers his liberty, or in case of war-
ranty, if the purchaser's title be in any way attacked, the pur-
chaser must be restored what the president of the province or
the judge may consider as due.    And what must he consider,
in order to form his decision?    The damages and losses ex-
perienced, "los daños e los menoscabos."    C. lib. 8, tit. 45,
L. 12, p. 424; Ibid. L. 21, p. 426; Ibid. L. 25, p. 427.

What is, under the Roman laws, the mode of estimating
damages in case of eviction?    C. lib. 8, tit. 45, L. 23, p. 427.

When the female slave is dead, the judge must pronounce,
by reason of the fruits, concerning the children.    D. lib. 6, tit.
1, L. 16; Ibid. L. 17, No. 1, p. 450.

In actions of revendication, what things àre considered as
fruits?    Ibid. L. 64, p. 464.

Children are not considered as fruits in case of usufruct.
D. lib. 7, tit. 1, L. 68, p. 505.    This rule is also contained in
the law now in force in Louisiana, and is undoubtedly an ex-
ception to the general rule concerning fruits.

In actions of restitution, fruits and the children of female
slaves are included.    D. lib. 12, tit. 6, L. 65, No. 5, Vol. 2,
p. 249.

4.  A purchaser evicted is to be reimbursed, as it respects
every interest which he had: Evictâ re, ex empto actio non
ad pretium duntaxat recipiendum, sed ad id quod interest com-
petit.    D. lib. 21, tit. 2, L. 70, Vol. 3, p. 218.    In this case,
are not the heirs of Martin interested particularly in not being

WESTERN DIS. evicted of the children of the female slave sold, or, in other
September,1841. words, are not said children the greatest interest they have in

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

the consequences of the eviction of the mother? Most un-
doubtedly; and if so, my clients are entitled to be indemnified
for the value thereof.

Fruits comprehend all losses. D. lib. 22, tit. 1, L. 19; Ibid,
L. 34; Ibid. L. 38, Nos. 5 and 8.

Increase of slaves ranked with fruit. D. lib. 41, tit. 3, L. 4,
No. 5.

5. Here follows the very case before the court. D. lib. 21,
tit. 2, L. 8. Venditor hominis emptori præstare debet quanti
ejus interest hominem venditoris fuisse. This is the principle,
on which the jurisconsult Julien bases his opinion, that: Sicut
obligatus est venditor, ut præstet licere habere hominem quem
vendidit, ita ea quoque quæ per eum adquiri potuerunt, præstare
debet emptori ut habeat, and applying this principle to a case
like the present one, he draws the conclusion, that the pur-
chaser of a female slave, who suffers the eviction of her child,
born in his possession, has his recourse against his vendor, to
be indemnified. It is true, that the adverse counsel has quoted
the opinion of Paul, in the same book, tit. 2, L. 42, which ap-
pears to contradict Julien. Why should this opinion be con-
sidered of more weight than Julien's, particularly when we
find, that the same jurisconsult Paul, in the L. 70, of the same
book and title, establishes the very same principle, and agrees
perfectly with Julien on the general rule? He rather appears
inconsistent with himself, when he contradicts the opinion of
Julien in the very first application of the principle to a case,
which presents the same facts. The decision of Paul, on the
application, is, in my humble opinion, erroneous, and contrary
to the true principles of equity and justice. It would be an
exception to a general rule adopted by himself: this exception
would be mischievous in its consequences, as it would limit the
right of warranty to the reimbursement of the price, were
Paul's doctrine to be sanctioned. On the contrary, the opinion
of Julien appears to me to be the best; it is concordant with

WESTERN DIS.
September,1841.
————
EDWARDS
ET AL., f. p. e.
vs.
MARTIN'S
HEIRS ET AL.

our old Spanish laws ; it agrees with the principles recognized repeatedly by the decisions of this tribunal, under both our codes, and it is undoubtedly founded on real principles of equity and justice. I sincerely hope, that Julien's doctrine will be adopted by this Honorable Court, and will receive its application in the present case ; and were it to be so, it seems to me, that the law, under which this question is to be decided, will have been enforced according to its true meaning and letter; and my clients will then have been indemnified for todos los daños e menoscabos, which they have experienced from the eviction.

*Thomas H. Lewis* for Andrus called in warranty, contended,

1. The contract out of which this controversy has grown, having been executed in 1802, while Louisiana was a province of Spain, the rights of the parties should be settled by the laws in force at that time.

2. By these laws, the vendor was liable, in case of eviction of his vendee, of the thing sold, to restore, 1st, the price paid, and 2d, damages when any were sustained by the eviction of the thing sold—*propter rem ipsam.* Partida 5, Tit. 5 Ley 32 and 36, and of his opinion was Pothier, as to the laws of France in his time, which laws, like those of Spain, were chiefly derived from the Roman Civil Law. See Contract de Vente, Nos. 130, 131, 136, 145.

3. The obligation of warranty, like all others, cannot reasonably be construed to extend farther than the terms of the contract, shown to have been intended and contemplated by the parties at *the time* they contracted ; and it cannot be supposed that he who sells a thing for $625 contemplates the payment to his vendee, in case of eviction of a sum of $4800,00 over and above the price he received. This is a principle founded both in reason and in law ; Pothier Con. de Vente, Nos. 136, 137.

4. The last position is so manifestly equitable that it was settled by the Roman law that damages in cases of eviction

37   VOL.   XIX.

WESTERN DIS.
September,1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL. could never extend further than the restitution of double the price ; and for the settlement of the rights of parties in such cases two actions were established, to wit :

The *actio ex empto* and the *actio de evictione,* by the latter of which the person evicted was entitled to recover from his vendor double the price he paid, and by the former, the price and damages, but in this case the damages could never exceed the double of the price, though they might be less.

See the doctrine on this subject fully treated in Pothier's Pandectes, Lib. 19, Tit. 1, and Lib. 21, Tit. 2, where many cases are put, and it seems to me, this distinction runs through all of them. Not having the work at hand, I cannot give the particular references, but refer to the passages beginning, " *In hac actione,*" &c. and " *Hoc tamen duas limitationes,*" &c. and request the honorable court to consult that very learned work.

5. By the Roman law, if a female slave be sold while pregnant and the vendee be evicted of the child after its birth, the vendor was not responsible in warranty, *a fortione;* he should not be responsible for the children not *conceived* until long after the sale. Dig. Lib. 21, Tit. 2, L. 42 and 43.

6. The children of slaves were not considered fruits by the Roman law ; Dig. Lib. 22, Tit. 1, L. 28, § 1. L. 27. ff. *de hered petit,* as held by Ulpian ; Dig. Lib. 5, Tit. 3, L. 27. But I contend that the vendees in this case had no right to recover fruits, but only such damages as they may prove they have sustained by the eviction of *the thing* sold to them, and that these damages must be confined to a *real loss* sustained by the loss of the thing sold, and not computed on a disappointment of the hope of gain.

Children follow the condition of their mothers, and if the mother be free, the children cannot be slaves ; so in this case, Polly Edwards having been always free *de jure,* her children were born free ; never were the property of the heirs of Martin, and never could have been the objects of a legal contract of sale ; and consequently could not have been warranted. So that Martin's heirs never had any title to them beyond a

WESTERN DIS.
September, 1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

naked possession which they obtained not by virtue of any written deed, but simply from the fact of their having been born of a woman they held in bondage.

On the equitable merits of the cause, it is abundantly proven, in the record, that Martin's heirs, so far from having suffered any loss or damages, by the purchase of Polly Edwards in 1802, have actually derived a much greater profit than is the usual result of such a transaction ; for they have enjoyed the services of Polly for over twenty years, until her physical strength is wasted, and her value reduced to $150 ; and have since received back the price they paid for her. They have also enjoyed the services of her four children for many years, which services are proven to have been worth, before the eviction, some four or five thousand dollars.

It is true, he who sells property with warranty of title, ought to be bound, by the terms of his obligation, to make good any loss his vendee may sustain by his want of title in what he sells, but where there is good faith, as in the present case, it seems to me that sound principles of equity and justice should place some limits on the extent of such obligation; otherwise cases may arise where the sale of a piece of property of trifling value may lead to the utter ruin of an innocent vendor.

*Morphy, J.* delivered the opinion of the court.

The mother of the plaintiffs, Polly Edwards, a free born woman of color, was sold as a slave for life in 1802, by Joseph Andrus to André Martin, for the sum of $625. She was then about nineteen years of age, and had no children. In 1829 she claimed and recovered her freedom against one Joseph Foreman, to whom she had been conveyed by André Martin. In that suit Andrus was decreed, as warrantor, to return to the heirs of Martin the money paid for the pretended slave, together with the costs ; the question of damages having been expressly reserved in case the children of this woman, born since the purchase, should thereafter recover their freedom. The pre-

WESTERN DIS.
September,1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL,

sent suit having been brought by them to be declared free, the vendor of their mother was again cited in warranty by the defendant. The cause was tried before a jury who gave their verdict for the plaintiffs; and at the same time assessed the damages due to the defendants at $4800. Judgment having been entered up in conformity with this finding of the jury, the executors of Andrus appealed.

The only question in this case is as to the extent of the damages due to the heirs of the vendee under the clause of warranty. The sale having taken place in 1802, the rights and obligations of the parties to it must be settled according to the laws in force at that time. Under the laws of Spain, the vendor was bound in case of eviction to reimburse the *price* of the thing sold, and to pay all the losses and damages sustained by the vendee " *con todos los dânos è menoscabos que le vinieron por esta razon ;*" Part. 5, T. 5, L. 32. But to what did these damages extend? Were they without any limit whatever, even with regard to a vendor in good faith? And did they embrace the increased value of the thing sold, however enormous, and from whatever cause it arose? On these questions, the Spanish writers we have been able to consult, throw little light; but Gregorio Lopez, in his notes on the above law, points to the Roman Digest, as the source from which it had been drawn, and both the counsel have also referred to it. On the part of the appellant, it is contended that the children of slaves were not considered as fruits by the Roman law, and that a vendor was not responsible in warranty for the eviction of the child of a female slave sold while she was pregnant; Dig. Lib. 22, T. 1, L. 28; and Dig. Lib. 21, T. 2, L. 42. The latter law reads thus: " *Si prægnans ancilla vendita et tradita sit, evicto partu, venditor non potest de evictione conveniri, qua partus venditus non est:*" *à fortiori*, it is said, a vendor should not be responsible for children not conceived until long after the sale. On the other hand, the counsel for the appellee relies on the 8th law in the same book and title, as establishing a different doctrine: " Venditor hominis emp-

WESTERN DIS.
September,1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

tori præstare debet, quanti ejus interest hominem venditoris fuisse ; quare sive partus ancillæ, sive hereditas quam servus jussu emptoris a dierit, evicta fuerit, agi exempto potest ; et sicut obligatus est venditor ut præstet licere habere hominem quem vendidit, ita ea quoque quæ per eum adquiri potuerunt, præstare debet emptori ut habeat." The apparent contradiction between these two texts is owing entirely to the difference of the actions alluded to in them. The Roman law gave to the purchaser two remedies, the *actio ex empto*, and the *actio de evictione*. The latter which was used to enforce the *stipulatio duplæ*, was subject to strict and technical rules. It could not be resorted to unless the purchaser had been evicted of the subject matter of the sale itself,while in all cases the *actio ex empto* could be brought to recover any damages sustained *prætor pretium*, whether the eviction was of the thing sold itself, or of any thing proceeding from it : vide Pothier's Pandects, vol. 8, p. 134 ; Dumoulin, Tract. de eo quod interest, No. 148. The general rule on the subject of warranty in the Roman Digest, is to be found in the 60th law of the same book and title. It provides that the purchaser must be indemnified to the extent of the interest he had in not being evicted, and this is the first law referred to by Gregorio Lopez, in his note on the word *menoscabos*. But this rule was subject in the Roman law to the limitation laid down in laws 43 and 44 of T. 1, Book 19, which are also cited by the learned commentator. Paulus says, " Planè, si in tantum pretium excedisse proponas, ut non sit cogitatum à venditore de tanta summa ; veluti si ponas agitatorem posteà factum, vel pantomimum, evictum esse eum qui minimo veniit pretio, iniquum videtur in magnam quam stitatem obligari venditorem ;" " cùm et fortè idem mediocrium facultatum sit, et non ultrà duplum periculum subire eum oportet." Dumoulin, while he approves of this equitable restriction of the warranty in relation to the expenses of the purchaser in the law just quoted, remarks that it should with more reason be adopted with regard to any great or accidental increase of the thing sold. " Igitur multo magis idem dicendum

*The Roman law, in laying down a general rule on the subject of warranty, provides, that the purchaser must be indemnified to the extent of the interest he had in not being evicted : on this there are some restrictions.*

WESTERN DIS.
September, 1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

In regard to agreements, having for their object certain quantity or amount, as in sales, leases, &c. the damages were not to exceed the value of the subject matter of the contract.

de augmento vel accessione casuali, quæ venit sine sumptu emptoris, ut fæcunditas et partus ancillæ emptæ, hereditas servo empto relicta et per eum acquisita;" idem tract. No. 138. To put an end to all doubts and disputes on this subject, Justinian in his law *de sententiis quæ pro eo quod interest proferuntur*, ordered that in all cases where the agreement had for its object a certain quantity or amount as in sales, leases, &c., the damages to be assessed should not exceed the value of the subject matter of the contract: Code, Book 7, T. 47, L. 1; but the vendor in good faith was alone entitled to the benefit of this restriction. From the above references of Gregorio Lopez, we cannot but believe that the principle of warranty was adopted and applied in Spain with the just and reasonable limitation which attached to it in the Roman jurisprudence. In commenting on this constitution of Justinian, Pothier says, that it rests upon the principle that the objections which flow from contracts can result only from the will and consent of the parties; that a debtor by engaging to pay damages for the non-performance of this obligation is presumed to have intended to be bound only for the highest damages that could be within his contemplation at the time of the contract, so that when they are such that they could not have been thought of or foreseen, they must be reduced to a sum which it was reasonable to expect they might reach; Pothier's Oblig. No. 164; Dumoulin Nos. 60, 137, 138, 139, and 148.

A debtor, engaging to pay damages for the non-performance of his obligation, is presumed to intend only the highest damages, within the contemplation of the parties at the time of the contract; and if they are such as could not have been foreseen, they must be reduced to a reasonable sum.

In the present case, it is unreasonable to suppose that Andrus, when in 1802, he sold Polly Edwards for $625, and gave his warranty, contemplated the payment to his vendee, in case of eviction, of a sum of $4800, as damages, over and above the price he should be decreed to reimburse. The circumstance of this woman refraining during 27 years from the exercise of her right to claim her freedom, and having, after this lapse of time six children and grand-children, (and she might have had a much greater number) forms certainly an event which cannot be reasonably supposed to have been thought of or contemplated by the vendor in 1802. It brings this case with-

in the exception which exempts the vendor in good faith from the ruinous obligation of paying the whole of the increased value of the thing sold ; Pothier vente, Nos. 136 and 137. This edict of Justinian, never had the force of positive law in this country, but the principle upon which it is founded is so conso‧nant to equity and reason, that we feel bound to follow it and give as an indemnity an amount equal to the value of the thing sold, to wit : $625.

WESTERN DIS.
*September*,1841.

EDWARDS
ET AL., f. p. c.
vs.
MARTIN'S
HEIRS ET AL.

Principles of the Roman law, which never had the force of positive law in this country ; but which are founded in equity and reason, will be adopted as rules, regula‑ting the indem‑nity, to which a party is liable, on his warranty.

As remarks the judicious and learned Dumoulin, it is im‑probable that the parties ever contemplated that the damages in case of eviction, should be larger than the value of the sub‑ject matter of the contract, " quia verisimiliter non fuit prævi‑sum nec cogitatum de suscipiendo majori damno vel periculo, ultrà rem principalem, quàm sit res ipsa principalis ;" Nos. 57 and 60, Idem Tract. This indemnity appears to us fair and even liberal, when it is considered that the vendees have been reimbursed the whole amount of the money paid for Polly Edwards in 1802. After they had enjoyed her services during 27 years, nearly the whole of the ordinary time of service of a slave, they were perhaps entitled to recover only a portion of the price for the probable remainder of the lifetime, because in the sale of a slave the warranty of the vendor does not con‑template the perpetual enjoyment of . the thing sold as in the case of a tract of land ; but only such a temporary enjoyment as a slave is susceptible of by the laws of nature : Pothier vente No. 163 ; Dig. Lib. 19, T. 1, Law 45 ; Dumoulin, Nos. 127 and 128.

So it is impro‑bable, that par‑ties ever con‑templated, that the damages in case of eviction should be larger than the value of subject matter of the contract.

So where the vendee of a fe‑male slave, pur‑chased in 1802, was evicted and the vendor re‑funded the price ; is after‑wards evicted of *her increase* or *children*, the vendor is only . to pay as dama‑ges, the value or original price of said slave, and not the value of the young slaves, born of her after the sale, although much greater.

It is therefore ordered, adjudged and decreed, that the judg‑ment of the District Court be so amended as to allow to the defendants against the estate of the late Joseph Andrus, instead of $4800, the sum of $625 with costs below ; those of this ap‑peal to be borne by the appellees.